NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 28 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROBERT EDWARD RAYA,

    Plaintiff-counter-defendant-Appellant,

v.

DAVID BARKA; NOORI BARKA;
EVELYN BARKA; CALBIOTECH, INC.;
CALBIOTECH, INC. 401(k) PROFIT
SHARING PLAN; CALBIOTECH, INC.
PENSION PLAN,

    Defendants-counter-claimants-Appellees.

No. 25-2394

D.C. No. 3:19-cv-02295-WQH

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Submitted March 31, 2026**
San Francisco, California

Before: NGUYEN, MILLER, and COLLINS, Circuit Judges.

Plaintiff-Appellant Robert Edward Raya appeals the district court's

judgment in favor of Defendants-Appellees David Barka; Noori Barka; Evelyn

Barka; Calbiotech, Inc.; the Calbiotech, Inc. 401(k) Profit Sharing Plan; and the

Calbiotech, Inc. Pension Plan (collectively "Defendants") on (1) Raya's claims

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes that this case is suitable for decision without
oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

under the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendants and (2) Defendants' counterclaim against Raya for breach of contract. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

## I

This lawsuit follows Raya's termination from Calbiotech, Inc. ("Calbiotech"), where, except for a few months, he was employed as a scientist from 2008 to 2016. Raya asserted various claims under ERISA, including denial of benefits, breach of fiduciary duty, and retaliation claims, all relating to the administration of Calbiotech's 401(k) Profit Sharing Plan ("401(k) Plan") and Calbiotech's Pension Plan ("Pension Plan"). Defendants filed a counterclaim against Raya, contending that Raya breached a Separation Agreement and General Release ("Agreement")—in which Raya allegedly released all of his then-existing legal claims against Defendants in exchange for a $12,500 severance payment—by initiating two lawsuits, including the instant action, as well as by lodging at least one complaint with the United States Department of Labor ("DOL").

In pretrial rulings, the district court granted summary judgment to Defendants with respect to certain claims and denied it as to others. After a bench trial on the remaining claims, the district court entered judgment in favor of Defendants. Raya timely appealed.

2

## II

We first address Raya's contention that the district court erred in finding, after the bench trial, that Raya had knowingly and voluntarily waived his then-remaining ERISA claims. We review the district court's findings of fact after a bench trial for clear error and its legal conclusions de novo. *Montana v. Talen Mont., LLC*, 130 F.4th 675, 686 (9th Cir. 2025); *see also* FED. R. CIV. P. 52(a)(6). We review the district court's evidentiary rulings for abuse of discretion. *United States v. Shih*, 73 F.4th 1077, 1096 (9th Cir. 2023).

### A

Raya argues that the district court improperly admitted and relied on various exhibits that he contends had not been produced in discovery and were instead untimely produced only two weeks before trial. The district court reasonably concluded that the relevant challenged exhibits "were already in Plaintiff's possession during the discovery period and/or are emails and correspondence sent to or from Plaintiff" and that, as a result, "Plaintiff ha[d] not demonstrated prejudice." In particular, the six challenged exhibits that Raya claims played a key role in the district court's findings of fact were all emails to or from Raya. Moreover, the one exhibit that the district court cited specifically in its voluntariness analysis was shown to Raya during his February 22, 2022 deposition

3

and was also in the original set of trial exhibits that had been produced earlier.[1]

Accordingly, the district court permissibly concluded that Raya had failed to demonstrate prejudice from any asserted discovery violation, and it therefore did not abuse its discretion in admitting and relying on the challenged exhibits.

**B**

In evaluating whether a waiver and release of ERISA claims was knowing and voluntary, "courts should consider the following non-exhaustive factors":

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee knew of his rights under the plan and the relevant facts when he signed the release; (7) whether the employee had an opportunity to consult with an attorney before signing the release; (8) whether the consideration given in exchange for the release exceeded the benefits to which the employee was already entitled by contract or law; and (9) whether the employee's release was induced by improper conduct on the fiduciary's part.

*Schuman v. Microchip Tech. Inc.*, 139 F.4th 1045, 1053 (9th Cir. 2025).[2]

The district court did not err in holding that the factor concerning

---

[1] Likewise, the Agreement itself had concededly been produced to Raya earlier in other forms.

[2] While *Schuman* was unavailable to the district court at the time of its ruling, our review of the substance of the district court's waiver analysis confirms that it covers all nine factors enumerated in *Schuman*.

consultation with a lawyer weighed in favor of finding that Raya's waiver was knowing and voluntary. After Raya signed the Agreement and accepted a check for $12,500, but before the expiration of the seven-day period during which he could still rescind the Agreement, he reached out to two separate lawyers. He consulted one lawyer regarding his termination from Calbiotech, and that lawyer referred Raya to an ERISA lawyer, who conducted a "lengthy interview," in which Raya "revealed everything [he] knew about Calbiotech's retirement plans and . . . [his] thoughts and strategies about the best way to recover [his] benefits." Raya claims that, because the ERISA lawyer thereafter "never called back" or replied to his follow-up email, this consultation does not favor a finding that Raya's acceptance of the Agreement was knowing and voluntary. But the district court considered these points and properly concluded that, "even if [Raya] did not receive helpful advice from the lawyers he consulted," his "consultation" with counsel still "demonstrate[d] that [he] had an awareness of his potential claim for benefits and other relief at that time" and that he was giving up such claims by accepting the Agreement. The district court also noted that, prior to signing the Agreement, Raya had contacted the DOL to make a complaint about Calbiotech's operation of its 401(k) Plan. The district court did not err in concluding that these "contact[s] with attorneys and the DOL demonstrate[] Plaintiff's awareness of his right to seek independent advice and [his] willingness to exercise that right," and

5

that this consideration "weighs in favor of a finding that the waiver was knowing and voluntary."

Raya also argues that the 401(k) Plan documents were withheld from him until after he had signed the Agreement and that this factor weighs against a finding that his acceptance of the Agreement was knowing and voluntary. But the record confirms that Raya knew that he lacked the 401(k) Plan documents when he signed the Agreement, because he made another request for a copy of those documents that same day. Raya was thus aware both that he had potential ERISA claims concerning the 401(k) plan and that he did not have full information concerning those possible claims, but he nonetheless gave those claims up. The district court therefore properly concluded that Raya knowingly and voluntarily waived his then-existing legal claims, including his remaining claims arising under the 401(k) Plan and his ERISA retaliation claim.[3]

### III

Defendants on appeal do not contend that Raya's waiver of claims in the Agreement extends to the Pension-Plan-related claims that had been dismissed on summary judgment before trial. We therefore turn to Raya's challenges to that ruling on the merits. We review a district court's grant of summary judgment de

---

[3] Because Raya's waiver provides a sufficient basis to affirm the district court's judgment rejecting these claims, we need not address any of Raya's arguments concerning the district court's alternative merits-based grounds for rejecting Raya's retaliation claim.

novo, *see Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016), and a denial of a motion for reconsideration for abuse of discretion, *see United States v. Lefler*, 880 F.2d 233, 235 (9th Cir. 1989).

In granting summary judgment in favor of Defendants with respect to all claims arising under the Pension Plan, the district court placed loadbearing weight on an alleged 2008 Amendment that limited the class of eligible participants in the Pension Plan to seven named individuals, not including Raya. According to Defendants, Calbiotech simultaneously adopted, on the same day in December 2008 (with both documents having an effective date of September 1, 2008), (1) an "Adoption Agreement" establishing the Pension Plan (which defined "Eligible Employees" to include, with specified exceptions, "All Employees"); and (2) an "Amendment" to the Plan that excluded from eligibility all employees other than seven named individuals. Rejecting Raya's challenges to the authenticity and legality of the Amendment, the district court concluded that, because Raya was not one of the seven listed eligible employees, he lacked standing to assert any claims concerning the Pension Plan.

Raya contends that the district court erred in holding that there was no triable issue as to whether the Amendment had been backdated. In his opposition to Defendants' summary judgment motion, Raya argued that several items of evidence supported an inference that the Amendment had been backdated. In

7

particular, Raya noted that one of the seven eligible employees listed by name in the Amendment was "an employee who was unknown to the company before she was hired for the first time in 2011." In support of that contention, Raya submitted a Pension Plan participant statement ("Participant Statement") of "Sabreen Najeeb"—a person listed in the Amendment—which showed that Najeeb began her employment with Calbiotech on March 14, 2011 and began participating in the Pension Plan on September 1, 2012.[4] Raya also noted that (1) when he requested and was sent the Pension Plan documents, the Amendment was not included; and (2) when the Plan Administrator denied his request to be enrolled in the Pension Plan, it purportedly did not rely on the Amendment.

Without explicitly addressing any of Raya's specific challenges to the 2008 Amendment's authenticity, the district court held that there was no triable issue as to that authenticity. In reaching this conclusion, the court relied on a sworn Declaration submitted by "David Barka, the Vice President of Calbiotech and a Trustee of the Pension Plan," asserting that the Amendment "was adopted/executed

---

[4] We reject Defendants' evidentiary objection to the Participant Statement raised in their opposition to *Raya's* motion for summary judgment. In response to that objection (which questioned whether this document was really part of an official form submitted by the Pension Plan to the DOL), Raya submitted under seal the entire Form 5500 to which that Participant Statement was attached, explaining that it was the official document submitted by the Pension Plan to the DOL. Absent contrary evidence (and Defendants presented none), Raya's showing was sufficient to establish that the facts concerning the timing of Najeeb's employment and participation could "be presented in a form that would be admissible as evidence," which is all that Rule 56 requires. *See* FED. R. CIV. P. 56(c)(2).

by Calbiotech concurrently with the Adoption Agreement on December 28, 2008." The district court summarily stated that, in its view, Raya "ha[d] not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false." Thereafter, in rejecting Raya's first motion for reconsideration, the district court rejected, on the merits, Raya's contention that the failure to produce the Amendment in response to Raya's request for the Pension Plan documents supported an inference of backdating. As the district court explained, the cover letter accompanying the delivery of those documents stated that only "certain documents" as opposed to "all documents" were being produced. Raya subsequently raised, in a further motion for reconsideration, the district court's failure to discuss the Amendment's inclusion of Sabreen Najeeb, but the district court summarily denied that motion, stating that its previous orders had "thoroughly considered the evidence and arguments presented by" Raya.

In response to Raya's evidence indicating that the Amendment covered a person first employed in 2011, Defendants did not come forward with any evidence that explained why the Amendment would mention a person who was not an employee in 2008. Instead, Defendants emphasized that Raya had not shown that Sabreen Najeeb was "*unknown*" to Calbiotech in 2008. Defendants likewise argue on appeal that Raya's evidence "does not eliminate or preclude the possibility" that the Amendment was executed in 2008 and that it "nam[ed]

9

prospective future employees who *may* be hired by the Company at some point in the future and who *may* become eligible to participate in the Pension Plan upon their satisfaction of its eligibility requirements." But Defendants failed to come forward with any evidence to support this speculative explanation, even though such evidence presumably would be readily available to them. In the absence of any *evidence* explaining why the Amendment mentions a person who was not hired until years later, we conclude that a reasonable trier of fact could infer that the Amendment was backdated and that Barka's declaration's contrary assertion is not credible. The credibility of that declaration cannot be assumed when, viewing the evidence in the light most favorable to the party opposing Defendants' summary judgment motion (*i.e.*, Raya), a contrary inference is permissible. *See Hittle v. City of Stockton*, 101 F.4th 1000, 1005 (9th Cir. 2024). And because the district court's rejection of Raya's Pension-Plan claims rested dispositively on the view that the Amendment was executed in 2008, we reverse the district court's summary judgment in Defendants' favor as to those claims.

## IV

Raya appeals two rulings by the district court denying his pretrial motions for sanctions. *See McCright v. Santoki*, 976 F.2d 568, 569–70 (9th Cir. 1992) (holding that an order denying sanctions is not immediately appealable but is appealable from the final judgment). We review discovery rulings, including those

10

involving discovery sanctions, for an abuse of discretion. *See Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 808 (9th Cir. 2019).

The district court did not abuse its discretion in denying Raya's motion for sanctions in connection with Defendants' alleged interference with subpoenas that Raya had served on three non-parties. At a discovery conference, the magistrate judge explicitly warned Raya, before he served the subpoenas, that documents received after the fact-discovery cut-off date might not be allowed at trial. Raya proceeded to serve the subpoenas with a requested response date that was one week after the discovery cut-off. Two days after the discovery cut-off (and 12 days after the subpoenas had been served), Defendants' counsel sent a letter to the subpoenas' recipients informing them that they objected to the subpoenas and requesting that they "not produce any documents to the requesting party prior to the challenge hereto being resolved by the Court or the subpoena being withdrawn by the plaintiff." Nonetheless, one of the three recipients produced documents in response to its subpoena. Given this context, the district court acted within its discretion in holding that Defendants' letter—which was sent after the discovery cut-off had passed—did not in any way interfere with the discovery process *within* the deadline set by the court and that sanctions therefore were not warranted.

We also conclude that the district court did not abuse its discretion by deferring, and ultimately denying, Raya's motions for sanctions based on the

allegation that Defendants introduced forged 401(k) Plan Documents. The district court permissibly deferred consideration of Raya's motion for sanctions until after trial on the ground that the "issue of whether Defendants falsified or misrepresented various plan documents is inextricably intertwined with the merits of Plaintiffs' claim." *See McCright*, 976 F.2d at 569 (noting that the propriety of sanctions may become clearer "[a]s the litigation continues and a fuller picture of opposing counsel's conduct emerges"). After the trial, the court acknowledged that Raya had "identified anomalies with Calbiotech's 401(k) Plan documents." In particular, Raya noted that there were two versions of the same exact 401(k) Plan document, and in one of them, the "original effective date" of the plan was listed as "9-1-2011," but in the other, the original "9-1-2011" date has been almost entirely covered with the different date of "9-1-2008." At trial, Barka testified at some length about the discrepancy, and in its post-trial findings, the district court explicitly credited Barka's testimony that the altered document was prepared by a since-deceased person who was apparently correcting a typographical error in the original document. The district court therefore expressly found that Raya had "failed to prove that any individual Defendant or employee or agent of Calbiotech intentionally attempted to mislead [Raya] or conceal the existence of a claim against any Defendant." Because that finding is not clearly erroneous, the district court acted within its discretion in declining to impose sanctions based on this allegation.

\*      \*      \*

For the foregoing reasons, we reverse the district court's grant of summary judgment dismissing Raya's Pension-Plan claims, and we affirm the judgment in all other respects.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**